**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LUIS RAMIREZ, individually and on behalf of all others similarly situated, | )<br>)<br>) CIVIL ACTION NO: |
| Plaintiff, | ) _____<br>)<br>) |
| v. | ) JURY TRIAL DEMANDED<br>) |
| TECNOVA ELECTRONICS, INC., | )<br>)<br>) |
| Defendant. | )<br>)<br>) |

## CLASS ACTION COMPLAINT

PLAINTIFF LUIS RAMIREZ, individually and on behalf of all others similarly situated, files this Class Action Complaint and states as follows:

1. Mr. Ramirez brings this action as a consumer class action against Tecnova Electronics, Inc. ("Tecnova") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").

2. Congress sought to protect consumers by creating heightened standards regulating how employers obtain and use information in consumer reports to conduct background checks on prospective employees. 15 U.S.C. § 1681b(b)(3).

3. The FCRA requires employers to provide certain notices to the subjects of the consumer reports before taking an adverse employment action whenever that action is based, even just in part, on a consumer report. Specifically, under 15 U.S.C. § 1681b(b)(3):

> in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending

       to take such adverse action shall provide to the consumer to whom the report relates—

          **(i)**    a copy of the report; and

          **(ii)**    a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3)1 of this title.

4. The FCRA is designed to permit individuals with ample time to identify any inaccuracies in the reports and correct them before an employment decision has been made. Providing a copy of the consumer report as well as a statement of consumer rights before making a final adverse employment decision arms the nation's millions of job applicants with the knowledge and information needed to challenge inaccurate, incomplete and misleading public-records-based reports.

5. Congress permitted consumers to sue to redress a breach of these substantive rights and, if successful, to be awarded actual, statutory and/or punitive damages. 15 U.S.C. §1681n.

6. Defendant violated Section 1681b(b)(3) when it took adverse employment actions against Mr. Ramirez and others similarly situated based on information in a consumer report without first providing those individuals with a copy of the pertinent consumer report and a statement of their rights under the FCRA, and without providing them with a reasonable opportunity to respond to the information in the report.

## JURISDICTION AND VENUE

7. This Court has federal question jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

8. Venue is proper in this Court under 28 U.S.C. § 1391(b) as Defendant regularly conducts business in this district and division and a substantial part of the events giving rise to the claims occurred in this district and division.

## PARTIES

9. Mr. Ramirez is a resident of Illinois.

10. He is a natural person and a "consumer" as protected and governed by the FCRA, 15 U.S.C. § 1681a(c).

11. Defendant is an Illinois corporation that is headquartered in Waukegan and conducts business in Illinois and throughout the United States.

## FACTUAL ALLEGATIONS

### A. Defendant's Business Practices

12. Defendant routinely conducts background checks on its job applicants as part of a standard screening process.

13. Defendant also conducts background checks on existing employees from time-to-time during the course of their employment.

14. On information and belief, the employment application process followed by Defendant is the usual and customary process, including the use of standardized documents.

15. Defendant obtains and uses consumer reports from consumer reporting agencies as part of its background check process. These reports constitute "consumer reports" for purposes of the FCRA.

16. The FCRA provides that "in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates . . . a copy of the report[,] and a description of the rights of the consumer under this title…" 15 U.S.C. § 1681b(b)(3)(A).

17. The FCRA defines "person" as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a(b). Defendant is a person as defined by the FCRA.

18. When used in connection with a consumer report, the FCRA defines "employment purposes," to mean "a report used for the purpose of evaluating a consumer for employment, promotion, reassignment or retention as an employee." 15 U.S.C. § 1681a(b).

19. In using consumer reports to determine employees' eligibility, Defendant uses consumer reports for employment purposes.

20. The FCRA defines "adverse action" to include "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee." 15 U.S.C. § 1681a(k)(1)(B)(ii). Additionally, "adverse action" includes any action taken or determination that is (i) made in connection with an application that was made by, or a transaction that was initiated by, any consumer, …; and (ii) adverse to the interests of the consumer." 15 U.S.C. § 1681a(k)(1)(B)(iv).

21. Under the FCRA, Defendant is a "person" that uses consumer reports for "employment purposes" and takes "adverse action" against consumers based in whole or in part on information in their consumer reports.

22. Accordingly, 15 U.S.C. § 1681b(b)(3)(A) requires Defendant to send each consumer a pre-adverse action letter containing a copy of their report and a description of their rights before taking adverse action against them.

23. Upon information and belief, Defendant typically does not provide job applicants or employees with a copy of their consumer report or a copy of their rights under the FCRA before taking adverse employment action against them based on information in such reports.

24. This practice violates one of the most fundamental protections afforded to employees under the FCRA, and also runs counter to longstanding regulatory guidance. (*See* Federal Trade Commission letter dated June 9, 1998 to A. Michael Rosen, Esq., regarding Section 604(b), Section 605, and Section 607 of the FCRA) ("[15 U.S.C. § 1681b(b)(3)(A)] requires that all employers who use consumer reports provide a copy of the report to the affected consumer before any adverse action is taken. Employers must comply with this provision even where the information contained in the report (such as a criminal record) would automatically disqualify the individual from employment or lead to an adverse employment action. Indeed, this is precisely the situation where it is important that the consumer be informed of the negative information….")).

25. By failing to engage in the required pre-adverse and adverse action processes, Defendant denies their applicants and employees information to which they are statutorily entitled.

26. By failing to provide the required information, Defendant denies applicants and employees a fair opportunity to proactively address red flags in their consumer reports.

27. The FCRA's requirement also helps to protect employees and applicants with respect to future employment since they can attempt to clean up their consumer report, even if the information in the report is accurate, if they receive the required information from the employer. Thus, when applying for other jobs, if the employee or applicant received the required notice that similar consumer reports will be used, they can make educated decisions whether to continue in the hiring process and possibly avoid associated expenses such as for interviews.

    **C.**     **Mr. Ramirez's Experience**

28. In the Spring of 2020, Mr. Ramirez applied for employment with Defendant.

29. On March 9, 2020, Defendant offered Mr. Ramirez a job as an SMT Operator 1 at an hourly rate of $17.00, pending the result of a background check.

30. Mr. Ramirez accepted the offer.

31. Shortly thereafter, Defendant purchased a consumer report on Mr. Ramirez from a consumer reporting agency.

32. Defendant intended to use the consumer report for employment purposes.

33. On March 25, 2020, Defendant's Executive Vice President emailed Mr. Ramirez: "[Y]our background check finally came through. I regret to inform you that based on the information found in your background results, Tecnova can no longer offer you employment."

34. When Defendant informed Mr. Ramirez of its decision, it had not given him a copy of the consumer report or a copy of his rights under the FCRA. Thus, Mr. Ramirez had no opportunity to view the results of the background check and he was not given a fair opportunity to proactively address red flags in his consumer report.

## CLASS ACTION ALLEGATIONS

35. Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following class:

> a. All employees or prospective employees of Tecnova Electronics Inc. in the United States (including all territories and political subdivisions of the United States) who were the subject of a consumer report procured by Tecnova Electronics Inc. (or that Tecnova Electronics Inc. procured), which contained any negative (derogatory) information about them, and for whom Tecnova Electronics Inc. failed to provide that employee or prospective employee with a copy of their consumer report and/or FCRA summary of rights before Tecnova Electronics Inc. took adverse employment action against them, within the period prescribed by the FCRA, 15 U.S.C. § 1681p, prior to filing this action.

36. Numerosity: The Class is so numerous that joinder of all class members is impracticable. Defendant regularly obtains and uses information in consumer reports to conduct background checks on prospective and existing employees. Plaintiff believes that during the

relevant time period, hundreds of Defendant's prospective and current employees satisfy the definition of the Putative Class.

37. Typicality: Plaintiff's claims are typical of the class members' claims. Defendant treated Plaintiff in the same manner as other class members.

38. Adequacy: Plaintiff will fairly and adequately protect the interests of the Class, and has retained counsel experienced in complex class action litigation.

39. Commonality: Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. These common questions include:

    a. Whether Defendant uses consumer report information to conduct background checks on prospective and current employees;

    b. Whether Defendant provides prospective and current employees with a copy of their consumer report and a description of their rights under the FCRA before taking an adverse employment action that is based, even in part, on the consumer report;

    c. Whether Defendant's violations were willful or negligent;

    d. The proper measure of statutory and punitive damages;

    e. The proper form of injunctive relief; and

    f. The proper form of declaratory relief.

40. Ascertainability: The Class can be identified. Upon information and belief, Defendant maintains records of its prospective and current employees, as well as the consumer reports it receives on those individuals.

41. Predominance and Superiority: Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the members of the Class to individually redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

## FIRST CLAIM FOR RELIEF

### (15 U.S.C. § 1681b(b))

42. Plaintiff realleges Paragraph Nos. 1-41 as if fully set forth.

43. Defendant violated Section 1681b(b)(3)(A) of the FCRA by failing to provide Plaintiff and others similarly situated with a copy of their consumer reports and a description of their rights under the FCRA before taking an adverse employment action against them that was based, even in part, on the consumer report.

44. The foregoing violations were willful. Defendant knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case

law. Defendant acted in deliberate and reckless disregard of its obligations to the rights of Plaintiff and other Class members under 15 U.S.C. § 1681b(b)(2)(A)(i). Defendant's willful conduct is reflected by, among other things, the following facts:

    a. Defendant is a large company with access to legal advice through its own attorneys and outside counsel, and there is not contemporaneous evidence that it determined that its conduct was lawful;

    b. Defendant knew or had reason to know that its conduct was inconsistent with FTC guidance and case law interpreting the FCRA and the plain language of the statute; and

    c. Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

45. Plaintiff and the Class members are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n.

46. Plaintiff and the Class members are also entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

WHEREFORE, Plaintiff prays for relief as follows:

    a. An order certifying the case as a class action on behalf of the proposed Class under Federal Rule of Civil Procedures 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

    b. Issuing proper notice to the Putative Class at Defendant's expense;

    c. An award of actual, statutory, and punitive damages for Plaintiff and the Class;

    d. Injunctive programmatic relief;

    e. An award of reasonable attorneys' fees and costs;

    f. An award of pre-judgment and post-judgment interest as provided by law; and

    g. Granting other further relief, in law or equity, as this Court may deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

**PLAINTIFF hereby demands a jury trial on all claims for which he has a right to a jury.**

DATED: May 4, 2020

By: /s/ Justin Burtnett

| | |
|---|---|
| Andrew L. Weiner (pro hac vice motion to be filed) | Justin Burtnett |
| Georgia Bar No. 808278 | ARDC #6281100 |
| Jeffrey B. Sand (pro hac vice motion to be filed) | Eugene Bilmes |
| Georgia Bar No. 181568 | ARDC #6318175 |
| WEINER & SAND LLC | HECHT SCHONDORF, LLC |
| 800 Battery Avenue SE | 900 Skokie Blvd., Suite 104 |
| Suite 100 | Northbrook, IL 60062 |
| Atlanta, Georgia 30339 | (312) 878-1202 |
| (404) 205-5029 (Tel.) | jburtnett@hechtschondorf.com |
| (404) 254-0842 (Tel.) | ebilmes@hechtschondorf.com |
| (866) 800-1482 (Fax) | |
| aw@atlantaemployeelawyer.com | LOCAL COUNSEL FOR |
| js@atlantaemployeelawyer.com | PLAINTIFF |

COUNSEL FOR PLAINTIFF